# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 05-60860-CIV-DIMITROULEAS/TORRES

JELD-WEN, INC., an Oregon
corporation,

       Plaintiff,

vs.

NEBULA GLASS INTERNATIONAL, INC.,
d/b/a "GLASSLAM" AND "N.G.I., INC.", a
Florida corporation, CARDINAL IG COMPANY,
a Minnesota corporation, and POLYGARD, INC.,
a Florida corporation,

       Defendants/Third-party Plaintiff Glasslam,

vs.

REICHHOLD, INC., a foreign corporation,

       Third-party Defendant.

_____/

## ORDER

This matter comes before Court on the Third-Party Defendant, Reichhold, Inc.'s

Alternative Motion to Preclude Plaintiff From Asserting Claims for Properties With

Unscheduled Repairs or for Emergency Reconsideration of July 11, Order [D.E. 172] and

Reichhold's Motion to Strike Portions of Jeld-Wen's Response to the Alternative Motion. [D.E.

183]. The Court has carefully reviewed the Motion, the Response, the Reply, has heard

argument of counsel during a hearing held on March 8, 2007, and has also reviewed the

subsequently submitted Amended Response [D.E. 193] and Amended Reply [D.E. 214]. This

matter is now ripe for the Court's disposition.

## I.  BACKGROUND

This Court previously entered an Order on July 11, 2006 which, *inter alia,* prohibited Reichhold from contacting Jeld-Wen's customers until after repairs of each of the customer's premises was completed.  *See* D.E. 76 and 91.  The primary purpose of this Order was to protect Jeld-Wen's customers from contact, but also allow Reichhold to obtain relevant discovery once Jeld-Wen had made repairs to that customer's premises.[1]  In fact, in a subsequent Order clarifying the July 11, 2006 Order, the Court explained that:

> [a]ll Defendants may conduct discovery on each of Jeld-Wen's customers as soon as that specific customer's repairs have been completed.  *This protocol allows Defendants to gain relevant discovery from Jeld-Wen customers without being forced to potentially wait until the very end of the discovery period.*  This protocol also protects Jeld-Wen and its customers from unnecessary contact by the Defendants until after repairs to the affected property have been completed.

(emphasis added).  *See* D.E. 91.  Reichhold now claims that since the Court entered the Orders, Jeld-Wen has only completed repairs on 38 of the 146 properties for which it is claiming damages.  Reichhold asserts that Jeld-Wen's delay in making repairs to its customers' premises have left Reichhold unable to conduct the discovery it needs to defend itself with regard to the claims on the remaining unrepaired properties.

In the pending Alternative Motion to Preclude Plaintiff From Asserting Claims for Properties With Unscheduled Repairs or for Emergency Reconsideration of July 11, Order ("Alternative Motion") Reichhold requests the Court to enter an Order precluding Jeld-Wen from making claims for homes which repairs have not been completed by the discovery cutoff.

---

[1]   Reichhold was also permitted to attend Jeld-Wen's customers' premises when repairs of the laminated windows had been scheduled by Jeld-Wen.   *See* D.E. 76.

2

Alternatively, Reichhold asks the Court to amend its July 11 Order to permit Reichhold to conduct formal and informal discovery on any Jeld-Wen's customers regardless of whether the intended repairs have been made. Because the Alternative Motion was only ripe approximately two weeks prior to the discovery cutoff, the Court determined that Reichhold's latter request was   essentially moot. Even if the Court were to lift the restriction imposed by the July 11 Order, it would not be possible for Reichhold to conduct discovery on approximately eighty (80) customers within the two week time frame. For this reason, the Court informed the parties at the March 8, 2007 hearing that Reichhold's Motion for Reconsideration of the July 11 Order would be denied as moot. The Court also informed the parties that it would treat the Alternative Motion as essentially a Motion in Limine to preclude Jeld-Wen from presenting claims for any properties that were not repaired by the discovery cutoff.

## II. DISCUSSION

In light of the Court's decision to treat the Alternative Motion as a Motion in Limine, the Court directed the parties to submit amended briefs on the issue. Those briefs have now been filed and fully considered. In its Amended Response [D.E. 193] Jeld-Wen maintains, as it did at oral argument, that the only issue to be determined at trial in this case should be the amount of damages incurred by Jeld-Wen in replacing windows containing defective Reichhold resin. [D.E. 193 at 5]. Jeld-Wen stated that it is prepared to offer testimony as to the costs incurred in the repairs to date and the average cost to repair the units remaining to be repaired. Jeld-Wen further maintains that Reichhold cannot show any prejudice to it in not having viewed each piece of glass containing the defective resin, because there is no evidence that the homes that have not yet been repaired have unique characteristics from the homes that have been

3

repaired.  In essence, Jeld-Wen claims that Reichhold has everything it needs to defend itself in this case.

In its Amended Reply [D.E. 214], Reichhold disagrees that damages is the sole issue in the case and argues that Jeld-Wen must also prove causation to prevail on its claims.  In support of its contention, Reichhold cites to Judge Dimitrouleas's summary judgment order entered in the *"Glasslam II"* case. (*Nebula Glass Int'l v. Reichhold, Inc.*, Case No. 05-cv-60704; D.E. 108).  In *Glasslam II,* the District Court held that the principal of collateral estoppel did not apply to the issue of causation.  Indeed, the Court explained that "Reichhold has not yet had a full and fair opportunity to litigate this issue as to these new claims."  *See id*.  The Court further added that "variables differ from claim to claim and differ from the conditions existing for the claims in the prior action," thus, Reichhold should be allowed to litigate the issue of causation.  *Id*.  Reichhold argues that the issue of causation must also be litigated in this matter and includes potential design problems, mold, water intrusion, wood rot and other causes of delamination in the relevant windows.

Although Jeld-Wen urges us to re-evaluate this analysis and in effect set aside the conclusion in Judge Dimitrouleas's *Glasslam II* Order, we will not do so.  This Court can appreciate Jeld-Wen's attempt to distinguish the tort cases cited in the *Glasslam II* Order from the contractual warranty claims presented in this matter.  However, the analysis and reasoning set forth in the *Glasslam II* Order are sound and should not be disturbed.  We agree, instead, with Reich hold that causation is a factor yet to be proved in this case; hence Reichhold should be permitted to fully prepare its defense in this matter, including gathering all relevant discovery on the properties that are included in Jeld-Wen's damages calculation.  Jeld-Wen

cannot merely use an average cost to repair and multiply that number by the number of defective units to come up with a damages calculation.  Instead, it must first prove that the Reichhold resin was the proximate cause of the damages sustained by Jeld-Wen.  This is particularly true given that, even at this late stage in litigation, it appears that there is a dispute as to the number of windows and doors containing Reichhold resin.  *See* D.E. 214 at 4.[2]

And, in defending against Jeld-Wen's claims of causation, it would be prejudicial to Reichhold to be prohibited in blanket fashion from obtaining evidence regarding causation to refute Jeld-Wen's claims.  Indeed, it would be quite detrimental if Jeld-Wen is permitted to proceed on claims for properties on which Reichhold was restricted from conducting discovery. This was never intended when the undersigned entered the July 11 protective order.  Here, Reichhold raises viable arguments that perhaps water intrusion, mold, wood rot, or the mere installation of Jeld-Wen's windows are the actual cause of delamination.  Reichhold should be able to pursue these theories and may only do so by being provided the opportunity to conduct discovery on all residences claimed by Jeld-Wen.  However, due to the discovery cutoff, this necessarily means that Jeld-Wen's claims should be limited in this action to those for which full discovery was had by Reichhold.  The fact that Jeld-Wen's repairs have taken longer than expected should not result in unfair prejudice to Reichhold in defending itself, at least where that prejudice was not due to Reichhold's own strategic decisions.  In this case, Reichhold

---

[2]     Reichhold claims that days before the March 8, 2007 hearing, Jeld-Wen produced an amended homeowner list which added 48 previously undisclosed homes for which it is claiming damages and deleted 22 homes that it had previously made claims for.

clearly opposed the entry of the July 11 Order, fearing that it would be prejudiced if it were not permitted to inspect the relevant properties.

Jeld-Wen nevertheless asserts that it should be able to merely multiply the number of windows replaced by an average cost of repair and, thus, Reichhold does not require access to all of the properties.  The Court disagrees.  Unlike the claims in *Glasslam II,* the properties at issue here are residential in nature.  Whereas perhaps a simple multiplication could potentially be done with commercial windows that are like in size and other aspects, residential windows pose a more complex analysis.  For instance, the size, shape, depth and placement of residential windows are not all uniform.  Indeed, all residences are unique.  One home may have a bay window and french doors, while another may not.  Some windows may be a thicker density than others.  The point is, Reichhold should be permitted to inspect the homes due to the unique nature of each home.

The Court finds that a discovery violation has occurred here.  That violation is obviously not the entry of the July 11 Order, but rather Jeld-Wen's implementation of that Order.  At its request, Jeld-Wen in effect held the keys to the process; Jeld-Wen controlled the timing of when its repairs would be conducted.  That process clearly slowed to a crawl late in 2006, through no fault of Reichhold.  Jeld-Wen, when faced with that problem, did not alert the Court to the problem by seeking an appropriate modification of an Order entered at its behest.  Jeld-Wen took a very passive approach when it knew or should have known that Reichhold would be in the position that it is now in shortly before trial.[3]

_____

[3]    Reichhold impliedly argues that Jeld-Wen sought to obtain the July 11 Order in bad faith, because the primary good cause cited in Jeld-Wen's motion – protection of its

That approach is, however, entirely inconsistent with a primary purpose of the July 11th Order:  to allow "Defendants to gain relevant discovery from Jeld-Wen customers without being forced to potentially wait until the very end of the discovery period." (*Nebula Glass Int'l v. Reichhold, Inc.*, Case No. 05-cv-60704; D.E. 108).  At that time, the Court anticipated Reichhold being given the opportunity to conduct relevant discovery on all of the homes at issue.  In fact, it was never contemplated that Reichhold would be precluded from discovery on homes that were not repaired.  It is fundamentally unfair, and inconsistent with the Court's discovery plan, that Reichhold be forced to defend against claims that it has not obtained discovery on.

That discovery violation here, however, was not necessarily intentional.  The record shows that Jeld-Wen may have faced extenuating circumstances that precluded it from completing its repair work, and the resulting delays were not necessarily the product of an effort to frustrate Reichhold's discovery rights in this litigation.  But the Court need not find that intentional or willful conduct occurred here to remedy the prejudice that Reichhold faces. *See Monsanto Co. v. Ralph,* 382 F.3d 1374, 1382 (Fed. Cir. 2004) (district court has the

---

customers – turned out to be a ruse.  It is true that one of the main purposes of the July 11 Order and Order of Clarification was to protect Jeld-Wen's customers.  Yet, during the hearing on March 8, 2007, when faced with the choice of restriction of its claims or protection of its customers, Jeld-Wen forgot about its customers and asked that Reichhold be allowed to immediately contact all of its customers in advance of trial.  This election by Jeld-Wen does cast doubt as to the legitimacy of Jeld-Wen's initial argument that it required the Court to intervene in the repair process to protect its customers from harassment by Reichhold.  If protection of its customers were the real goal, one would think Jeld-Wen would not have so readily agreed to Reichhold's request for immediate and unrestricted contact of these very same customers.  The Court will still assume, however, that the good cause originally cited in Jeld-Wen's motion was asserted in good faith at the time the motion was filed.

inherent power under Rule 37 to sanction abuses of the judicial process irrespective of the existence of any particular order).  The Court's power under the discovery rules, when faced with a circumstance that legitimate discovery was deprived of a litigant, whether intentional or not, is extremely broad.  *See Valley Engineers, Inc. v. Electric Engineering Co.,* 158 F.3d 1051, 1056 (9th Cir. 1998) (justice is the central factor in a sanctions order under Rule 37).

The key here is that a drastic sanction order is not appropriate, in light of the absence of willfulness and the fact that the violation here is clearly indirect.  Jeld-Wen may not have intentionally sought to deprive Reichhold of discovery it was entitled to, but its implementation of this Court's Order had the same net effect.  Therefore, a drastic sanction – dismissal of claims or outright preclusion of evidence – is wholly improper.  And that is precisely why the Court was concerned at the hearing that the record be clear that any relief under this Order be without prejudice to Jeld-Wen pursuing its damage claims for any properties not yet repaired, and thus not yet made available for discovery.  Otherwise, an order precluding Jeld-Wen from seeking damages for the undiscovered properties could be deemed dispositive and unnecessarily broad.  Reichhold, in its reply following the hearing, clearly and expressly stipulated that any relief under this Order was without prejudice to Jeld-Wen pursuing its damage claims in a later-filed action for the properties that would be excluded from its damage claim in this trial. [D.E. 214 at 10].

In sum, the undersigned finds that it would be extremely prejudicial to Reichhold (and the other Defendants) to allow Jeld-Wen to proceed on claims for properties that have not yet been repaired and, thus, have not been the subject of discovery by the Defendants.  Although Jeld-Wen may have made every effort to make repairs in a timely fashion, the bottom line is

that it has not been able to complete its repairs by the end of the discovery cutoff.  Because causation remains an issue to be proven at trial and because the claims in this matter vary considerably from the *Glasslam I* and *II* cases, Reichhold must be given an opportunity to conduct discovery on all properties.

With this objective in mind, an in Limine Order that remedies this failure to provide discovery is appropriate and falls well within the Court's discretion.  Jeld-Wen shall be permitted to go forward with claims on properties for which repairs have been completed and for which Reichhold was provided an opportunity in discovery to inspect the repairs and the damage.  Jeld-Wen however, shall be precluded in this lawsuit from making claims for any properties that have not been repaired by the discovery cutoff, or for properties that had been repaired but not with timely notice to Reichhold pursuant to the Court's July 11 Order.  If Jeld-Wen wishes to pursue these remaining claims in a separate lawsuit, it may do so then, but not now.

Reichhold's stipulation that Jeld-Wen may continue to pursue damages for these properties at a later date excepts those properties referenced in the Reply that Reichhold claims were not timely included in a notification to Reichhold before the repairs were conducted, in violation of the July 11 Order.  Reichhold argues that Jeld-Wen's damage claims for these limited number of properties should simply be precluded and stricken without any further opportunity to address them in later proceedings.  That argument will not be accepted, however, for the simple reason that Reichhold did not timely raise that issue with the Court at a much earlier stage.  Clearly, Reichhold knew more than thirty days prior to filing this pending motion that those properties were repaired without notice to Reichhold.  Yet, Reichhold did not

comply with its own obligations in this regard by alerting the Court to the problem at a more timely stage in the case, and not simply weeks shy of the discovery cutoff.  That is precisely what S.D. Fla. Local R. 26.1.H was designed to prevent.  Reichhold's failure to comply with this Rule precludes the more drastic sanction order that it now seeks.  As stated earlier, dispositive sanctions for what occurred in this case are not warranted and will not be entered. This Order, therefore, will simply preclude Jeld-Wen from pursuing damage claims in this trial for unrepaired properties or any other properties that were not made available to Reichhold in discovery for inspection on a timely basis.

### III.   CONCLUSION

Accordingly, for the reasons set forth above, it is hereby **ORDERED and ADJUDGED** as follows:

1.       Reichhold's Alternative Motion to Preclude Plaintiff From Asserting Claims for Properties With Unscheduled Repairs or for Emergency Reconsideration of July 11, Order [D.E. 172] is **GRANTED IN PART and DENIED IN PART** as follows:

a.       Reichhold's Motion to Preclude Plaintiff from Asserting Claims for Properties With Unscheduled Repairs [D.E. 172-1] is **GRANTED**. Jeld-Wen shall be limited at trial to asserting claims for the premises which were *repaired and inspected* by Defendants prior to the end of the discovery period (i.e., March 23, 2007).  Jeld-Wen shall not be permitted to assert claims regarding the remaining properties that have not yet been repaired or inspected as of the discovery cutoff.  Jeld-Wen may raise claims on these remaining properties in a later proceeding.

10

b.      As announced during the March 8, 2007 hearing, Reichhold's Motion for

Emergency Reconsideration of the July 11 Order [D.E. 172-2] is

**DENIED AS MOOT**.

2.      Reichhold's Motion to Strike Portions of Jeld-Wen's Response to the Alternative

Motion [D.E. 183] is **DENIED AS MOOT** in light of the Court's granting of Reichhold's

Motion to Preclude.

3.      All other requests and/or restrictions sought by the parties are hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 24th day of

April, 2007.

EDWIN G. TORRES
United States Magistrate Judge

cc:     Honorable William P. Dimitrouleas
        counsel of record

11